UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

MARCUS ANTHONY MATTOX,     )
     )
     Plaintiff,     )     No. 7:24-CV-74-REW
     )
v.     )
     )
UNITED STATES OF AMERICA, *et al.*,     )     MEMORANDUM OPINION
     )     AND ORDER
     Defendants.     )

**\*\*\*   \*\*\*   \*\*\*   \*\*\***

In December 2024, federal inmate Marcus Mattox filed a *pro se* complaint asserting, among other claims, that various health care providers at USP Big Sandy were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. *See* DE 1 (Complaint) at 1–5, 10–13. He specifically brings claims against nurse practitioner Heather Eperson, psychologist Dr. Jessica Lucius, and health care administrators Andrew Slone, Kathryn Blankenship, and Kevin Bayes. *See id.* at 1–3. Mattox sues these defendants pursuant to the doctrine established in *Bivens v. Six Unknown Federal Narcotics Agents*, 91 S. Ct. 1999 (1971). *See id*. at 14. Mattox also sues the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80 ("FTCA"). *See* DE 1 at 1, 14.[1] These defendants collectively move to dismiss the complaint or alternatively, for summary judgment. *See* DE 23 (Motion). Briefing is complete. *See* DE 31 (Response); DE 37 (Reply). The Court will grant the motion in part and deny it in part for the reasons explained below.

---

[1] The Court previously dismissed some of Mattox's claims and some of the defendants upon initial screening. *See* DE 7 (Order) at 1–2. It does not further address the dismissed claims or defendants here.

## I. Background

Mattox's allegations are as follows[2]: Between July 2023 and September 2023, Eperson informed Mattox that CT scans of his lungs revealed infection and enlarged lymph nodes. *See* DE 1 at 10 ¶ 1. In the months following, an outside pulmonologist ordered that Mattox receive a Breo Ellipta inhaler. *See id*. at ¶ 2. But Eperson did not administer Breo Ellipta to Mattox, and he began experiencing pain. *See id*. at ¶ 3. According to Mattox, Assistant Health Service Administrator Blankenship did not ensure that he received Breo Ellipta and falsified medical records to cover up that failure. *See id.* at 11 ¶ 15.

Tests conducted between November 2023 and February 2024 revealed that the infection had spread from Mattox's right lung to his left. *See id.* at 10 ¶ 4. During this period, Mattox sent numerous "cop-outs"—requests to health care staff to provide medical examination and treatment—to Eperson about his condition. *See id*. at ¶ 5. Due to infection, he began to cough up blood, and blood was in his stool. *See id*. He also experienced sharp pain in his lungs and chest, loss of vision, and shortness of breath. *See id.* In February 2024, Eperson also failed to provide Mattox with the protein supplement drink "Ensure" or submit him for a psychological evaluation, as directed by an outside oncologist. *See id.* at 11 ¶ 9.

Throughout this time period, Mattox repeatedly insisted to BOP staff that he be informed of any medical test results so that he could ensure that he was transferred to a prison with a higher "Care Level" capable of providing the medical care necessary and appropriate for his conditions. *See id.* at 10 ¶¶ 6, 8. Despite those requests, in January 2024, Eperson did not advise him that PET scan results showed that he had liver disease. *See id*. at ¶¶ 6–7. Mattox only learned about the test

---

[2] Given the procedural posture, for purposes of discussion, the Court relays as fact Mattox's well-pleaded allegations. *See D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014) (noting that when addressing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint).

results from his attorney during a telephone call the following month. *See id.* at ¶ 7. Eperson also failed to promptly inform Mattox of blood test results, which were also necessary to assure his transfer to a medical facility. *See id.* at 11 ¶ 9.

Mattox contends that the actions or inactions of Eperson and Blankenship caused further infections and medical complications and prevented his timely transfer to a higher Care Level prison. *See id.* at 11–12 ¶¶ 10–11, 16. Mattox states that he was only transferred to a higher Care Level facility after he intentionally refused medical treatment in an effort to worsen his medical conditions and after he resorted to unspecified "means other than his medical conditions." *See id.* at 11 ¶¶ 10–11.

In December 2023, Health Service Administrator Slone unilaterally canceled a bronchoscopy procedure ordered by an external specialist without first consulting Mattox's physician. *See id.* at 11 ¶ 12. This cancellation, along with several other medical appointments Slone canceled, caused further bodily injury to Mattox. *See id.* at 11 ¶¶ 12–14. As a result, Mattox was also placed on "medical hold," preventing or delaying improperly his transfer to a higher Care Level facility. *See id.* at 11 ¶ 14.

On February 6, 2024, Mattox experienced a suicidal episode while on the recreation yard. *See id.* at 12 ¶ 20. During the episode, Mattox spoke with prison psychologist Dr. Lucius for a few minutes. *See id.* He claims that Dr. Lucius ignored a request to speak further about his suicidal ideation, failed to perform a psychological evaluation, and failed to place him in a suicide cell. *See id.* Later the same day, Mattox was found unconscious in his cell; he implies a suicide attempt. *See id.* at ¶ 21. Dr. Lucius then placed Mattox on suicide watch for 24 hours, not the 72-hour period dictated by policy. *See id.* According to Mattox, Dr. Lucius's failures to follow policy led to his suicide attempt nine days later. *See id.*

Finally, Mattox raises allegations against Kevin Bayes, the prison's Clinical Director. According to Mattox, Bayes did not lift the "medical hold" on him, ensure that he received proper medical attention, or assign him to a medical observation cell. *See id.* at ¶ 17. Bayes also falsely represented in a medical assessment sheet that Mattox was "doing well in regards to his Mental Health, taking his meds." *See id.* at ¶ 18.

Mattox has filed fourteen grievances complaining of delays in receiving medical care, obtaining Ensure protein supplements, and transferring to a higher-level care facility. *See* DE 23-2 (Eads Decl.) at 2 ¶ 4. In his verified complaint, Mattox claims that he also filed numerous lower-level grievances and appeals complaining about Slone's cancellation of his medical appointments, but those documents "were either destroyed by the prison or never forwarded to the appropriate staff." *See* DE 1 at 11 ¶ 13. Regardless, Mattox raised the issue of appointment cancellation in a formal grievance he filed in March 2024. *See* DE 23-6 (Request for Administrative Remedy) at 3. In that grievance, assigned Remedy ID # 1193156, Mattox also requested transfer to a medical facility and access to Ensure and a Breo Ellipta inhaler. *See id.* The warden denied the grievance, stating that Mattox's appointments were canceled due to his repeated refusal to attend medical appointments. *See* DE 23-6 at 4. The warden also noted that medical reviewers at the Central Office rejected the requested prescription for Breo Ellipta and that his current weight did not warrant Ensure. *See id.* Finally, the warden explained that Mattox's diagnoses did not justify a transfer to a higher-level care facility. *See id*. The Mid-Atlantic Regional Office ("MARO") and the Central Office denied Mattox's appeals, finding that he had repeatedly interfered with his medical care by refusing to attend appointments, his conditions were stable, transfer to a medical facility was unnecessary, and no evidence indicated he was not receiving timely and appropriate medical care. *See id* at 6–9. This is the only grievance that Mattox has fully exhausted through the

4

BOP's Administrative Remedy Program ("ARP"). *See* DE 23-2 at 2 ¶ 4.

In March 2024, MARO received from Mattox a Form SF-95, *Claim for Damage, Injury or Death*. *See* DE 23-7 (Form SF-95) at 1. In his claim, Mattox states that after he expressed suicidal ideations to Dr. Lucius on February 7, 2024, she did not place him on suicide watch. *See id*. According to Mattox, he later ingested pills that caused him to fall into a deep sleep. *See id.* He also alleges that he awoke to guards banging his head on the floor. *See id.* The guards then handcuffed him "with the shield on [him]." *Id*. Mattox claims that he "received several stitches over [his] right eye where C.O.'s busted [his] face open at" and that he has "increased migraines[,] sharp head aches in [his] right eye[.]" *Id*. He thus requests $900,000 for personal injuries. *See id.* The BOP denied Mattox's request by letter, explaining that a suicide risk assessment was performed shortly after his conversation with Dr. Lucius, and the assessment determined that Mattox was a low suicide risk. *See* DE 23-8 (Denial Letter). The BOP also stated that after Mattox was found unresponsive in his cell later that day, he was taken to the medical department, and subsequently, to the hospital, where testing revealed no acute injuries. *See id*.[3]

Through his complaint, Mattox seeks declaratory relief and monetary damages pursuant to *Bivens* and the FTCA for the defendants' asserted deliberate indifference to his medical needs in violation of the Eighth Amendment, thus for "not addressing his physical and mental health issues." *See* DE 1 at 13. He also asserts violation of the Fifth and Eighth Amendments for disclosing medical information to non-medical personnel. *See id*. at 2, 5.

---

[3] In his response, Mattox offers additions to and/or revisions of the facts alleged in his complaint. *See* DE 31 at 3, 5–11. Some allegations relate to his medical care; others relate to his exhaustion of administrative remedies. *See id*. But "a court evaluating a motion for judgment on the pleadings (or a motion to dismiss) must focus only on the allegations in the pleadings. . . . Plaintiffs cannot . . . amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). The Court therefore does not consider any new allegations in Mattox's response when deciding the motion before it.

## II. Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S. Ct. at 1965. Hinging on Rule 8's minimal standards, *Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that a claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).[4]

## III. Discussion

A. <u>Claims Based upon the Disclosure of Medical Information</u>.

Before considering the defendants' arguments, the Court first resolves a claim asserted by Mattox in his complaint but unaddressed by the defendants in their motion. In the body of his complaint, Mattox contends (in a single, partial sentence) that the defendants shared his medical information with persons outside the Health Services Department. *See* DE 1 at 2. This, he claims, violated his due process rights under the Fifth Amendment and amounted to cruel and unusual punishment in violation of the Eighth Amendment. *See id.* at 2, 5. In their motion, the defendants discuss Mattox's *Bivens* claims solely through the deliberate indifference lens of the Eighth Amendment. *See* DE 23-1 at 5–12, 14–19. They do not acknowledge Mattox's due process claim under *Bivens* for improper disclosure of medical information or consider its viability. They

---

[4] Because, as shown *infra*, the Court resolves this motion on a Rule 12(b)(6) basis, the governing standard for Rule 56 motions for summary judgment is ultimately irrelevant.

mention a due process claim only as a basis to argue its incognizability under the FTCA. *See* DE 23-1 at 20–21.

While the defendants do not address this claim, the Court does so *sua sponte*. The Court granted Mattox *pauper* status at the outset of the case. *See* DE 6 (Order). Having done so, a district court must dismiss a claim "at any time" if it determines that the claim is frivolous or fails to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B); *Hill v. Lappin*, 630 F. 3d 468, 470–71 (6th Cir. 2010). That obligation extends to grounds for dismissal not raised by defendants in a dispositive motion. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997) ("Further, § 1915A is applicable at the initial stage of the litigation, while § 1915(e)(2) is applicable throughout the entire litigation process. A case that may not initially appear to meet § 1915(e)(2) may be dismissed at a future date should it become apparent that the case satisfies this section."), *overruled on other grounds, Jones v. Bock*, 127 S. Ct. 910 (2007); *see also Davidson v. Fed. Bureau of Prisons*, Civil No. 5:15-351-JMH, 2017 WL 1217168, at *12 (E.D. Ky. Mar. 31, 2017).

Mattox fails to support his due process claim with *any* facts. A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element needed to sustain recovery under a viable legal theory. *See Phila. Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). In mentioning the claim in his complaint, Mattox references the attached "Memorandum In Support." *See* DE 1 at 2. But that document, actually titled "Statement of Claims," does not contain any factual (or other) information regarding Mattox's due process claim. *See* DE 1 at 10–13 (Statement of Claims). The Court must dismiss a complaint if it fails to allege facts sufficient to state a facially plausible claim. *See Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 247 (6th Cir. 2012). Devoid of any supporting facts, Mattox's due process claim does not even minimally satisfy this requirement, so

the Court dismisses it pursuant to § 1915(e)(2) for failure to state a claim upon which relief may be granted.

   B. Claims Asserted under the FTCA.

   Given the discursive presentation of arguments in the motion to dismiss, the Court addresses grounds for dismissal in a different order. First, the FTCA. The United States correctly states that Mattox pursued administrative exhaustion under the FTCA only for his claim "regarding his suicidal episode" and not for his other remaining claims. *See* DE 23-1 at 12–13.[5] Mattox filed a request for administrative settlement under the FTCA, complaining that the guards used force against him after his failed suicide attempt, causing physical injuries. *See* DE 23-7 at 1. While Mattox briefly states that Dr. Lucius failed to place him on suicide watch, he identifies the beating and resulting eye injury as "the basis of the claim" on the Form SF-95. *See id.* Mattox did not file any other SF-95 forms related to the other allegations and claims in the instant complaint.

   Mattox responds collectively to exhaustion defenses under both the FTCA and *Bivens. See* DE 31 at 10–12. First, he alleges that prison staff was generally aware of his numerous medical complaints because of the single fully exhausted grievance submitted through ARP and through several other grievances that he filed at the prison level but did not pursue further. *See id.* at 10; DE 31-15 (ARP Grievance and Appeals) at 2–10; DE 31-16 (Administrative Remedy Generalized Retrieval) at 3–15. Through these filings, he contends, "[e]ach claim has properly been brought to the attention of the BOP as required by 28 U.S.C. section 2675." *See* DE 31 at 11. But informal "notice" through expressions of dissatisfaction to prison staff is not enough; section 2675 demands formal presentment of a claim to the BOP. *Cf. Bray v. Bon Secours Mercy Health, Inc.*, 97 F.4th

---

[5] The defendants characterize the exhaustion requirement as jurisdictional. *See* DE 23-1 at 12. That is incorrect. *See Kellom v. Quinn*, 86 F.4th 288, 293 (6th Cir. 2023) (". . . the FTCA's exhaustion requirement isn't jurisdictional . . . "). Instead, Section 2675 establishes mandatory claims-processing rules that must be satisfied prior to filing suit. *See Copen v. United States*, 3 F.4th 875, 881–82 (6th Cir. 2021).

403, 416 (6th Cir. 2024) (noting that 28 U.S.C. § 2675(a) "mandates that a plaintiff file an administrative claim with the appropriate agency before initiating a suit"). Even if Mattox had fully exhausted these claims under the ARP, the ARP process is entirely separate from the administrative procedure that a claimant must utilize under the FTCA. *Cf. Mendoza v. United States*, 661 F. App'x 501, 502 (9th Cir. 2016) ("We reject [Plaintiff's] contention that exhaustion under the Prison Litigation Reform Act satisfies the requirement to exhaust under the FTCA.").

Second, Mattox makes the sweeping and largely factless claim that "[t]he prison has made the whole grievance process for the plaintiff unavailable and incapable of use." *See* DE 31 at 11. But in his complaint, Mattox alleges only that prison staff discarded his grievances regarding appointment cancellation. *See* DE 1 at 11. He does not make that same allegation for any other claim and may not do so for the first time in an unsworn response to a motion to dismiss. *See* note 3, *supra*. In any event, prison staff does not process the Form SF-95 used to exhaust FTCA claims; those forms are sent by mail to MARO's outside office. And BOP records establish that Mattox has filed more than a dozen grievances under the ARP regarding his medical care and numerous FTCA claim letters, refuting his assertion that the process is categorically unavailable to him. *See* DE 23-2 at 2 ¶¶ 4–5.

Third and finally, Mattox argues that, for purposes of exhaustion, his grievances need only provide notice of his claims, not articulate a legal basis for relief. *See* DE 31 at 11–12. That is generally true, but a grievance must still "[give] prison officials fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made . . . in a prisoner's complaint." *See Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006). And a grievance about one issue does not exhaust a claim about an entirely different matter. *See Pruitt v. Holland*, Civil Action No. 10-CV-111-HRW, 2011 WL 13653, at *5–6 (E.D. Ky. Jan. 4, 2011) (collecting

cases). Here, a complaint about the handling of Mattox's suicidal episode could not have given notice to prison officials of issues with his prescription medications or delays in his treatment, both which occurred at different times and involved different staff. The Court therefore dismisses those FTCA claims for lack of exhaustion.

The United States independently argues that Mattox asserts only constitutional claims, which are not cognizable under the FTCA. *See* DE 23-1 at 19–21. Mattox does not respond to this argument. *See generally* DE 31. To the contrary, he repeatedly references the Eighth Amendment, cites to case law discussing its standard, argues within that framework, and asserts that he states valid claims under the Fifth and Eighth Amendments. *See id.* at 4–13.

Mattox cannot assert constitutional claims against the United States under the FTCA. *See Koprowski v. Baker*, 822 F.3d 248, 254 (6th Cir. 2016). Mattox's complaint contains dozens of references to the Eighth Amendment, the Fifth Amendment, to his Due Process rights, to "cruel and unusual punishment," to "deliberate indifference," and to violations of his constitutional rights. *See* DE 1 at 11–13. Conversely, nowhere in his complaint does Mattox mention negligence or include any phrase evoking such a theory of recovery. *See generally id.* Instead, when asked directly in the complaint form "[w]hat rights under the Constitution, federal law, federal regulations, state law, or state regulations do you allege the Defendant(s) violated?", Mattox responded succinctly "Fifth and Eighth Amendment of The United States Constitution." *Id.* at 5. While the Court has an obligation to liberally construe Mattox's *pro se* allegations, it "is not required to conjure up causes of action" or "to explore exhaustively all potential claims of a pro se plaintiff." *Lowe v. Boone Cnty. Sheriff's Dep't*, Civil Action No. 2:14-92-KKC, 2014 WL 3695377, at *7 (E.D. Ky. July 23, 2014) (citation and quotation marks omitted).[6] Because Mattox

---

[6] *See also Mayes v. Ky. Parole Bd.*, No. 3: 18-CV-32-GFVT, 2018 WL 3594971, at *2 (E.D. Ky. July 26, 2018) ("It is one thing for a Court to infer the basis for a claim where a pro se plaintiff is silent or equivocal

asserts only violations of his constitutional rights, the Court must alternatively dismiss the remaining FTCA claims against the United States for lack of jurisdiction.

      C.    <u>Claims Asserted under *Bivens* - *Exhaustion*</u>.

Federal law requires a prisoner to fully exhaust his administrative remedies before filing suit to assert a civil claim regarding the conditions of his confinement. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 127 S. Ct. 910, 918–19 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court."). To satisfy this exhaustion requirement, the inmate must fully comply with the agency's "deadlines and other critical procedural rules." *Woodford v. Ngo*, 126 S. Ct. 2378, 2386 (2006). Such rules include timely filing of the grievance and full utilization of an available appeals process. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999).

Mattox fully exhausted only the grievance related to his request to transfer to a medical facility, his request for Ensure and a Breo Ellipta inhaler, and his complaint regarding medical appointment cancellation. *See* DE 23-6 at 3. The Court also assumes, for purposes of discussion, that Mattox's transfer request exhausted his complaints about the "medical hold" because the two are somewhat factually related. For purposes of the ARP, Mattox did not properly exhaust his claims regarding his suicidal episode, the alleged alteration of medical records, the failure to place him in a medical observation cell, or the failure to apprise him of medical test results.[7] As noted above, that prison officials may have been generally aware of a prisoner's dissatisfaction is not

---

on the subject[.] [I]t is quite another to pretend that the plaintiff asserts a different claim than the one actually written on the page simply because that claim will necessarily fail. . . . [Plaintiff] having expressly invoked one source for his claim, the Court cannot rightfully choose another one for him under the guise of 'liberal construction.'").

[7] As previously mentioned, Mattox alleged that prison staff destroyed or discarded his grievances complaining that his medical appointments had been canceled. *See* DE 1 at 11 ¶ 13. Mattox made no comparable allegation about grievances related to his other medical complaints.

enough; the prisoner must exhaust his administrative remedies in full compliance with the agency's grievance rules. *See Macias v. Zenk*, 495 F.3d 37, 44 (2d Cir. 2007) (notice of a claim alone is not sufficient after *Woodford*, which permits suit only after "proper exhaustion" of the administrative system). Dismissal is therefore appropriate with respect to the unexhausted *Bivens* claims.

Because the only claim against Dr. Lucius is related to Mattox's suicidal episode and that claim does not survive dismissal under the FTCA or *Bivens*, the Court dismisses Dr. Lucius as a defendant.

> D.    <u>Claims Asserted under *Bivens - Cognizability*</u>.

The individual defendants contend that *Bivens* does not provide a damages remedy for the constitutional violations asserted with respect to Mattox's medical care. *See* DE 23-1 at 5–12. These remaining claims—the ones Mattox appears to have exhausted—involve the refusal to transfer him to a medical facility (including related allegations regarding placement of a "medical hold"), the cancellation of his medical appointments, and the failure to provide him with Ensure and a Breo Ellipta inhaler.

Congress long ago created 42 U.S.C. § 1983, a federal statute authorizing a damages action against state officials for violation of civil rights. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022). It did not provide a similar remedy for constitutional violations by federal actors. *See* 42 U.S.C. § 1983. Noting the omission, in 1971, the Supreme Court implied such a cause of action against federal officers for the arrest of a citizen unsupported by warrant or probable cause and for the excessive use of force, all in violation of the Fourth Amendment. *See Bivens*, 91 S. Ct. at 2002–05. The Supreme Court later permitted an implied damages action against a member of Congress for assertedly violating the Fifth Amendment by engaging in sex discrimination in employment. *See Davis v. Passman*, 99 S. Ct. 2264, 2269, 2279 (1979). The

following year the Supreme Court similarly found cognizable under *Bivens* a claim against federal officials for deliberate indifference to a prisoner's serious medical needs in violation of the Eighth Amendment. *See Carlson v. Green*, 100 S. Ct. 1468, 1471–74 (1980).

This Court has previously noted that:

> Since that nine-year span concluded forty years ago, the Supreme Court has consistently refused to extend *Bivens* to any new context or new category of defendants. Indeed, it has expressly rejected requests to extend *Bivens* on eight different occasions. The Supreme Court has thus made clear that *Bivens* is a remedy available only in limited settings, and that expanding that remedy is disfavored. Federal courts have viewed the decision in *Ziglar* as clearly narrow[ing] the circumstances in which a plaintiff may successfully state a claim under principles established in *Bivens*.

*Hower v. Damron*, Civil Action No. 0:20-CV-53-WOB, 2021 WL 4449980, at *4 (E.D. Ky. Sept. 28, 2021) (citation and quotation marks omitted). "Essentially then, future extensions of *Bivens* are dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023).

Conversely, the Supreme Court has also repeatedly declined to retreat from *Bivens* within its narrow and already-defined boundaries. Following *Ziglar v. Abbasi*, 137 S. Ct. 1843, two justices queried whether the Court should overrule outright the implied damages remedies created by *Bivens* and its progeny in *Davis* and *Carlson*. *See Hernandez v. Mesa*, 140 S. Ct. 735, 750 (2020) (Thomas, J., and Gorsuch, J., concurring) ("[T]he time has come to consider discarding the *Bivens* doctrine altogether."). But two years later, only a single justice openly espoused that view. *See Egbert v. Boule*, 142 S. Ct. 1793, 1809–10 (2022) (Gorsuch, J., concurring). Stepping back from abandonment, Justice Thomas, now writing for the majority, held that "rather than dispense with *Bivens* altogether, we have emphasized that recognizing a cause of action under *Bivens* is 'a disfavored judicial activity.'" *Egbert*, 142 S. Ct. at 1803 (*quoting Ziglar*, 137 S. Ct. at 1856–57). In a recent decision, the Supreme Court again validated this framework. *See Goldey v. Fields*, 145 S. Ct. 2613, 2615 (2025) (*per curiam*). So, the current anatomy of *Bivens* is to maintain the status

quo, neither expanding nor retreating from the existing field of cognizable claims.

To the extent that the defendants ask this Court to overrule *Carlson* for all intents and purposes, *see* DE 23-1 at 5–12, the Court, of course, declines the invitation. As the Supreme Court has elsewhere made clear:

> We reaffirm that if a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions. . . . The trial court acted within its discretion in entertaining the motion with supporting allegations, but it was also correct to recognize that the motion had to be denied unless and until this Court reinterpreted the binding precedent.

*Agostini v. Felton*, 117 S. Ct. 1997, 2017 (1997) (citation and quotation marks omitted). The Supreme Court "has stopped short of overruling the *Bivens* trilogy[,]" *Snowden v. Henning*, 72 F.4th 237, 242 (7th Cir. 2023), so a remedy under *Carlson* will remain viable under *Egbert*-indicated circumstances until the Supreme Court expressly holds otherwise.

When considering whether *Bivens* provides a remedy for alleged constitutional misconduct by federal officials, the Court employs a two-step analysis. First, the Court must ask "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action[?]" *Egbert*, 142 S. Ct. at 1803 (citations and quotation marks omitted). The Supreme Court has explained:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 137 S. Ct. at 1859–60. If the Court decides that the case does present a "new context," it reaches the second step and asks whether there are any "special factors" indicating that the courts are arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Ziglar*, 137 S. Ct. at 1857–58. Although the two inquiries are logically and analytically distinct, in *Egbert*, the Supreme Court appears to have modified *Ziglar*'s two-step test by explaining that the first question is "often" subsumed into the second: "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 142 S. Ct. at 1803. That clarification is discussed further below.

The defendants' motion misconstrues this analytical framework. The defendants argue that "Mattox's constitutional claims present a new context as they diverge factually from the Supreme Court's three prior *Bivens* cases" because the claims in *Carlson* were based upon "the defendants['] fail[ure] to take any action to treat an inmate's emergent and fatal asthma attack." *See* DE 23-1 at 6–7. They point to one district court decision, albeit without providing a complete citation, that has accepted the argument that *Carlson* only applies to medical emergencies. *See id*. (*citing Wash. v. Fed. Bureau of Prisons*, Civil Action No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) ("Plaintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition. This difference is significant[.]")). But the cited *Washington* holding and the defendants' argument rest upon a plainly incorrect factual premise and are, in this Court's view, misguided regardless.

First, the facts and claims in *Carlson* did not involve only emergency medical treatment but also long-term treatment for a chronic condition. In *Carlson*, the plaintiff alleged that prison

officials refused to transfer her son (the decedent) to another facility and disregarded advice from his doctors to properly treat his chronic asthma, despite full knowledge that both medical staff and medical facilities at the prison were "grossly inadequa[te]." *See Carlson*, 100 S. Ct. at 1470 n.1. The plaintiff also claimed that officials failed to give the decedent prompt and appropriate medical attention following an asthma attack. *See id.* Thus, the Eighth Amendment claims asserted against the defendants in *Carlson* were based upon both prison officials' long-term failure to provide a medically sufficient facility and treatment to address the decedent's chronic condition, as well as the short-term failure to provide life-saving measures in the midst of a medical emergency. *See id.* As this Court has previously held post-*Egbert*,

> The foregoing plainly refutes the defendants' assertion that *Carlson* was limited to emergency medical treatment. While some cases have read *Carlson* in that manner, the Court respectfully disagrees. Recent decisions by the Sixth Circuit suggest that *Carlson* retains vitality, permitting an implied damages action, notwithstanding the presence of insignificant factual differences with that case. Because [the plaintiff's] claims regarding his medical care do not present a new context, engaging in the special factors analysis is unnecessary.

*Werman v. Joyner*, CIVIL ACTION NO. 22-71-DLB, 2023 WL 5537900, at *7 (E.D. Ky. Aug. 28, 2023) (citations and quotation marks omitted). There are differences between the exact medical ailments and treatments involved in Mattox's case and those involved in *Carlson*, but "[s]ome differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context." *Ziglar*, 137 S. Ct. at 1865.

For these reasons, most courts continue to hold that *Bivens* retains post-*Egbert* vitality to provide a remedy for Eighth Amendment deliberate indifference claims arising from prison medical care in sufficiently serious contexts, whether for emergent or chronic conditions or for immediate or ongoing care. This Court has done so. *Cf. Matthews v. McCreary*, No. 6:24-CV-62-REW, 2025 WL 318096, at *2–3, *6 (E.D. Ky. Jan. 28, 2025) (permitting Eighth Amendment

deliberate indifference claims arising from the failure to provide immediate or near-term medical care for cuts caused by restraints and skin damage caused by the use of pepper spray, as well as the ongoing failure to consistently administer prescribed medications, because they did not present new contexts); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *2 (E.D. Ky. Sept. 30, 2022) ("*Carlson* recognized an Eighth Amendment *Bivens* claim specifically for an *Estelle v. Gamble* deliberate indifference scenario."). Conversely, the Court has not hesitated to hold incognizable Eighth Amendment *Bivens* claims regarding conditions of confinement with, at best, an attenuated connection to medical care. *See, e.g., Robinson v. United States*, No. 6:21-CV-204-REW, 2024 WL 1219716, at *6 (E.D. Ky. Mar. 21, 2024) (declining to extend *Carlson* to encompass claim that nurse "feigned" medical checks upon inmate while he was restrained).

The Sixth Circuit has not addressed the question in a published decision. But in several unpublished decisions, it has assumed that prison medical care claims remain cognizable under *Carlson*. *Cf. Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139, at *3 (6th Cir. May 2, 2023) (finding Eighth Amendment excessive force claims incognizable under *Bivens* but in assessing merits of Eighth Amendment deliberate indifference claim, noting that "the Supreme Court has recognized a *Bivens* action for an Eighth Amendment claim based on the failure to provide adequate medical care"); *see also Greene v. United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022) (analyzing Eighth Amendment deliberate indifference claim under standard framework). A plurality of the other federal appellate courts permit such claims. Some explicitly. *See, e.g., Brooks v. Richardson*, 131 F. 4th 613, 615–16 (7th Cir. 2025); *Watanabe v. Derr*, 115 F.4th 1034, 1036 (9th Cir. 2024); *Vaughn v. Basset*, No. 22-10962, 2024 WL 2891897, at *4 (5th Cir. 2024). Others apply *Ziglar* and indicate that a particular claim will not present a new context if it arises in circumstances closely analogous to those in *Carlson*, *i.e.*, because of the

type of defendants sued or the type of inadequate medical care. *Cf. Waltermeyer v. Hazlewood*, 136 F. 4th 361, 365–67 (1st Cir. 2025); *Rowland v. Matevousian*, 121 F. 4th 1237, 1242–44 (10th Cir. 2024); *Nellson v. Doe*, No. 21-6206, 2023 WL 3336689, at \*5–6 (4th Cir. May 10, 2023).[8] An outlier circuit holds that the existence of an alternative remedial process (the BOP's ARP) is alone enough to warrant finding that *all* medical claims will constitute a "new context" and are thus incognizable under *Bivens*. *See Johnson v. Terry*, 119 F.4th 840, 858–62 (11th Cir. 2024).[9]

As discussed above, to determine if Mattox's claims require extension of *Carlson* to a new context, the Court asks not about the particulars of his ailments or the medical treatments for them, but instead whether his claims implicate meaningfully different separation-of-powers concerns than those present in *Carlson* itself. *See* Ziglar, 137 S. Ct. 1843, 1857–58. A review of the complaint makes clear that they do not. Mattox sues his immediate healthcare providers (Eperson and Dr. Lucius) and health care administrators (Blankenship, Slone, and Bayes), each of whom was directly involved in decisions about his medical care and/or his facility placement. Reviewing the rank of the officers involved, the defendants are of the same level as those involved in *Carlson*. Likewise, the constitutional right at issue and the legal mandate under which the officers were

---

[8] When deciding whether the claims at issue were meaningfully different from those in *Carlson*, the courts in *Rowland* and *Waltermeyer* focused on the minutiae of medical treatment. *See Waltermeyer*, 136 F. 4th at 366–67; *Rowland*, 121 F. 4th at 1243. That analysis is untethered to the concerns identified in *Ziglar* and *Egbert*: to decide whether a difference is "meaningful," the relevant question is whether the differences between the case at hand and *Carlson* are ones that implicate separation of powers considerations that are different from those already at play in *Carlson*. *See Egbert*, 142 S. Ct. at 1805.

[9] A new context may exist where there are "potential special factors *that previous Bivens cases did not consider*." *Ziglar*, 137 S. Ct. at 1860 (emphasis added). In *Carlson*, the Supreme Court concluded that the FTCA was not an adequate alternative remedial scheme that rendered an implied remedy under *Bivens* inappropriate. *See Carlson*, 100 S. Ct. at 1472–74. *Carlson* did not expressly consider the ARP, but the regulations embodying the ARP were already in place. The regulations were therefore part of the background legal framework in place when *Carlson* was decided. *See Koprowski v. Baker*, 822 F.3d 248, 256–57 (6th Cir. 2016) ("But the ARP, which has been in effect for nearly four decades, . . . did not affect the Supreme Court's conclusion in *Carlson*, nor the decisions of the Seventh, Ninth, and Tenth Circuits. More to the point, since *Carlson*, the Supreme Court has explicitly held that the ARP does not displace a *Bivens* remedy because it is not an effective substitute for a money-damages action.").

operating are defined in both cases by the Eighth Amendment, specifically, the prohibition against deliberate indifference to medical needs. Further, the official action at issue in Mattox's complaint, including the alleged refusal to provide medications prescribed by a treating physician or to transfer him to a facility with adequate medical care, were directly at play in *Carlson*. The extent of judicial guidance regarding prison medical care, established in *Estelle v. Gamble*, is the same, as is the "risk of disruptive intrusion by the Judiciary into the functioning of other branches." *See Ziglar*, 137 S. Ct. at 1859–60. There are, to be sure, some granular differences between this case and *Carlson*, but those are mostly "differences of degree, not kind." *See Waltermeyer*, 136 F. 4th at 370 (Breyer, J., dissenting). The Court compares the circumstances of this case with those of *Carlson* because those circumstances, individually and collectively, define the relevant separation-of-powers concerns in both cases. *See Ziglar*, 137 S. Ct. at 1859–60. Under such circumstances, the defendants' argument fails at step one: Mattox's claims, considered individually and collectively, do not ask the Court to intrude upon legislative prerogatives to a greater degree than in *Carlson*. Thus, Mattox's claims do not require the Court to extend *Carlson* to a new context.

        E.      <u>Claims Asserted under *Bivens* – *Stating a Claim*</u>.

The Eighth Amendment prohibits government officials from inflicting "cruel and unusual punishments." U.S. Const. amend. VIII. Pursuant to that prohibition, prison officials must provide inmates with humane conditions, including food, clothing, shelter, medical care, and reasonable safety. *See Farmer v. Brennan*, 114 S. Ct. 1970, 1976 (1994). Those officials will violate the Eighth Amendment if they act with "deliberate indifference" to inmate health or safety, including an inmate's medical needs. *See Wilson v. Seiter*, 111 S. Ct. 2321, 2326 (1991).

The "deliberate indifference" standard includes both objective and subjective components. *See id.* at 2323–25. The objective component requires a plaintiff's medical need to be "sufficiently

serious," meaning "one that has been diagnosed by a physician as mandating treatment *or* one that is so obvious that even a lay person would easily recognize the necessity for doctor's attention." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896–97 (6th Cir. 2004). The subjective component requires that the defendant was actually aware of and consciously disregarded an excessive risk to the prisoner's health. *See Clark-Murphy v. Foreback*, 439 F.3d 280, 286 (6th Cir. 2006). The defendants contend that Mattox's allegations, even when taken as true, fail to state a deliberate indifference claim under the Eighth Amendment. *See* DE 23-1 at 14–19. The Court addresses Mattox's remaining claims against the remaining defendants in turn.

First, Mattox alleges that Eperson and Blankenship both failed to provide him with the prescribed Breo Ellipta inhaler and that Eperson also failed to provide him with Ensure. *See* DE 1 at 10–11 ¶¶ 2, 9, 15. Defendants characterize Mattox's allegations as expressing mere disagreement with the care he was provided rather than evidencing a deliberate disregard for his medical care. *See* DE 23-1 at 17. But the complaint does not allege that these defendants' actions were the product of any independent medical judgment about the appropriate course of treatment, only that they failed to carry out the prescribing doctor's orders. While Mattox sometimes describes his alleged experiences passively rather than expressly connecting specific conduct to a particular defendant, *cf.* DE 1 at 10–11 ¶¶ 1–11, the Court construes his allegations liberally due to his *pro se* status, *see Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007). The complaint, construed liberally, establishes that Eperson was his primary point-of-contact at the prison for receiving medical care and the medications prescribed by his treating physicians. *See id*. Thus, the allegations do not indicate mere disagreement with the care provided but instead challenge the refusal of staff to provide the medical care (here, the inhaler and the Ensure) expressly ordered by his treating physician. Such allegations are sufficient to state an Eighth Amendment claim, at least

at the initial pleading stage. *Cf. Gamble*, 97 S. Ct. at 291 (indicating that "intentionally interfering with the treatment once prescribed" is sufficient to state a deliberate indifference claim).

Next, Mattox also claims that Eperson did not promptly treat his lung infection despite serious and outwardly noticeable symptoms. *See* DE 1 at 10-11 ¶¶ 2, 4–5, 9. He alleges that he sent multiple requests for treatment to her, describing his existing medical conditions and his current and dire symptoms. *See id.* at 10 ¶ 5. Allegations of a failure to provide treatment timely (or at all) to an inmate whose need for urgent medical care is readily apparent are enough to adequately state a claim of deliberate indifference. *Cf. Lumbard v. Lillywhite*, 815 F. App'x 826, 833–34 (6th Cir. 2020) (evidence of a failure to document complaints regarding prisoner's deteriorating eyesight was enough for a deliberate indifference claim to survive summary judgment). Accepting Mattox' allegations as true, as the Court must at this stage, the complaint adequately states an Eighth Amendment claim from these facts.

Mattox further alleges that Slone canceled several of Mattox's previously scheduled appointments with treating physicians, causing further deterioration of his health and subjecting him to an unwarranted and harmful "medical hold." *See* DE 1 at 11 ¶ 12–14. In response, the defendants argue that, per the complaint, he sometimes received medical testing and treatment, and he himself eventually refused medical care. *See* DE 23-1 at 18. However, it is unclear from the complaint whether Mattox began to refuse medical care before or after the appointment cancellations. And the defendants' argument disregards context: Mattox alleges that he refused medical care precisely because he believed that the care he was receiving from the defendants was so poor that it was life-threatening, and he hoped that his worsening condition would trigger his transfer to a prison with better care facilities. *See* DE 1 at 11 ¶¶ 11, 14. The viability of this claim presents a close question, but ultimately, the Court concludes that the allegations against Slone are

sufficient to state a claim, at least with the benefit of liberal claim construction. In response to Mattox's administrative filings, BOP officials asserted that several medical appointments were canceled because Mattox refused to attend earlier consultations that were necessary prerequisites to the appointments. *See* DE 23-6 at 6. However, arguments regarding the justifications for the cancellations are undeveloped at this time. The Court leaves resolution of such arguments, if made, to subsequent motion practice.

Finally, Mattox alleges that Bayes did not take affirmative steps to lift the "medical hold" placed on Mattox or ensure that he received proper medical attention. *See* DE 1 at 12 ¶ 17. Defendants argue, among other things, that Bayes cannot be held liable merely because of his supervisory authority. *See* DE 23-1 at 17. The Court agrees. Supervisors are liable only for their own misconduct, not derivatively for that of their subordinates. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a plaintiff must therefore plausibly allege "active unconstitutional behavior," which goes beyond "a mere failure to act." *Crawford v. Tilley*, 15 F.4th 752, 761 (6th Cir. 2021) (quotation marks and citations omitted). Unlike his health care providers, Mattox does not allege that Bayes was directly and personally involved in his medical care apart from completing an isolated medical assessment report. Absent a clearer indication that Bayes was personally involved in the medical care about which Mattox complains, the complaint fails to state an Eighth Amendment claim against Bayes.

F.    Qualified Immunity Entitlement.

The defendants conclude with a brief argument that they are entitled to qualified immunity. *See* DE 23-1 at 21–24. "[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Crawford*, 15 F.4th at 760 (citation and quotation marks omitted)).

While this case involves claims under *Bivens*, "the qualified immunity analysis is identical under either cause of action." *Wilson v. Layne*, 119 S. Ct. 1692, 1696 (1999). The defendants argue that Mattox's allegations fail to state an Eighth Amendment claim but make no effort to address the "clearly established" prong of the qualified immunity analysis. *See* DE 23-1 at 21–24. Such a truncated presentation may waive the defense. *See Cockrun v. Berrien Cnty.*, 101 F.4th 416, 419–20 (6th Cir. 2024); *Evans v. Vinson*, 427 F. App'x 437, 447 (6th Cir. 2011). Regardless, the defendants' qualified immunity argument offers no basis for dismissal distinct from the Rule 12(b)(6) grounds already presented and decided. The Court therefore need not consider it independently from its prior analysis. Here, at this stage, the qualified immunity defense does not change the calculus or merit relief.

Accordingly, the Court **ORDERS** as follows:

1.    DE 23 is **GRANTED IN PART** and **DENIED IN PART**.

2.    Mattox's claims under the FTCA are **DISMISSED** with prejudice. Defendant United States of America is **DISMISSED** as a party to this action.

3.    Mattox's claims under *Bivens* against Defendants Bayes and Lucius are **DISMISSED** with prejudice. These defendants are **DISMISSED** as parties to this action.

4.    The remaining defendants **SHALL** file an answer to the complaint by **no later than September 23, 2025.**

5.    Given case posture, the Court **REFERS** this matter to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) to conduct all pretrial proceedings, including discovery and pretrial management, and to oversee the matter until the point of dispositive motions, at which time the case will revert back to the undersigned for

resolution of same and the setting of any trial date; and

6.    The Court **DIRECTS** the Clerk to assign this matter to a Magistrate Judge per

General Order No. 23-10.

This 2nd day of September, 2025.

**Signed By:**

**_Robert E. Wier_**

**United States District Judge**